RYOBI DIE CASTING, Appellant–
Defendant,

v.

Scott MONTGOMERY and Michelle
Montgomery, Appellees–
Plaintiffs.

No. 73A05–9805–CV–278.

Court of Appeals of Indiana.

Feb. 3, 1999.

Donald L. Dawson, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for Appellant.

David W. Craig, Scott A. Faultless, Schuerman Kelley & Craig, Batesville, for Appellees.

**OPINION**

ROBB, Judge.

*Case Summary* [1]

Appellant–Defendant, Ryobi Die Casting (USA), Inc. ("Ryobi"), appeals the trial court's denial of its motion for summary judgment on a negligence claim brought by Appellees–Plaintiffs, Scott and Michelle Montgomery ("Montgomery"), after Scott was injured while working on Ryobi's premises. We reverse.

1. We herewith deny Ryobi's petition for oral ar-

*Issues*

Ryobi raises two issues for our review which we restate as:

1. Whether Ryobi is entitled to summary judgment because it did not have a non-delegable duty to Montgomery, an employee of an independent contractor, there being no "peculiar risk" involved and the work would not probably cause injury; and,

2. Whether Ryobi is entitled to summary judgment because it did not have a non-delegable duty to Montgomery to prevent violation of safety regulations by Montgomery's employer.

*Facts and Procedural History*

The facts most favorable to the judgment show that Ryobi owns a manufacturing facility in Shelbyville, Indiana. Ryobi hired Steelcore Construction, Inc., a general contractor, to replace the roof of the building. Steelcore employees performed the work by cutting the corrugated sheet metal roofing into smaller sections for removal and replacement. On October 21, 1994, Steelcore employee Scott Montgomery, while attempting to remove a section of roofing, stepped on a section which had been cut by a co-employee and fell through to the floor below and was injured.

On August 26, 1996, Montgomery filed a complaint against Ryobi containing two counts, alleging that Ryobi was vicariously liable for Steelcore's negligence because Ryobi had a non-delegable duty to Montgomery. Montgomery claimed that Ryobi hired an incompetent and inexperienced contractor and permitted that contractor to violate state safety regulations. On October 24, 1997, Ryobi filed a motion for summary judgment, which was denied on April 8, 1998. Trial court certified its order for interlocutory appeal, which this court granted on June 5, 1998.

*Discussion and Decision*

We review the trial court's decision granting summary judgment to determine whether the trial court correctly concluded that

gument.

"there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind.1997). The party appealing the trial court's grant or denial of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *North Snow Bay, Inc. v. Hamilton*, 657 N.E.2d 420, 422 (Ind. Ct.App.1995). A grant of summary judgment may be affirmed upon any theory which the designated materials support, and we are not limited to reviewing the trial court's reasons for granting summary judgment. *Roessler v. Milburn*, 692 N.E.2d 1377, 1378 (Ind. Ct.App.1998) (citation omitted).

In Indiana, the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor. *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 586 (Ind.1995). However, five exceptions have been recognized for more than half a century. *Id.* The exceptions are: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.*

The theory of tort liability for the negligent hiring of an independent contractor is subsumed in the existing exceptions to the rule of non-liability for the conduct of independent contractors. *Id.* at 587. The duties associated with Indiana's five exceptions are considered non-delegable, and an employer will be liable for the negligence of the contractor, because the responsibilities are deemed "so important to the community" that the employer should not be permitted to transfer these duties to another. *Id.* An employer of an independent contractor may be subject to liability for personal injuries caused by the employer's failure to exercise reasonable care to employ a competent and careful contractor when one of the five exceptions to the rule on non-liability for the torts of independent contractors is applica-

ble. *Id.* The fact that partial remuneration through worker's compensation benefits may be available to an employee of an independent contractor does not diminish the policy rationale of providing an additional incentive to eliminate or minimize particular risks of injuries which arise from non-delegable duties. *Id.* at 588.

## I.

Montgomery contends that Ryobi had a non-delegable duty under exceptions four and five. Application of the fourth exception requires an examination of whether, at the time of the making of the contract, there existed a peculiar risk which was reasonably foreseeable and which recognizably called for precautionary measures. *Id.* The issue is whether Ryobi or Steelcore should have foreseen that the roofing activities would probably cause injury without proper precautions. Where the fourth exception applies, the risk involved must be "peculiar" and the required precautions must be "special." *See id.*

This court recently addressed a factually similar situation in *Red Roof Inns, Inc. v. Purvis*, 691 N.E.2d 1341 (Ind.Ct.App.1998), *trans. denied.* There, the landowner, Red Roof Inns, hired Purvis's employer to perform reroofing work on several of its properties. Purvis fell from the roof of one of the buildings and was injured. We held that "Red Roof could have foreseen the *possibility* that Purvis could be injured from a fall if no safety precautions were in place. More than the *possibility* of harm, however, is required; the plaintiff must show a *probability* of such harm." *Red Roof Inns, Inc.*, 691 N.E.2d at 1346 (emphasis in original).

Montgomery admits that "to a seasoned and experienced roofing contractor, the risks associated with Ryobi's roofing job would have been routine and ordinary." Appellee's Brief at 15. Yet, he attempts to distinguish the present case from *Red Roof Inns*, by alleging that unlike the contractor in that case, Steelcore was inexperienced in roofing work. We do not find this distinction meaningful, however.

The focus of the fourth exception is on the "act to be performed," not the level of skill of the contractor. Like Steelcore, the contractor in *Red Roof Inns* utilized no protective equipment to prevent injury. In both cases, it was not the amount of experience of the contractor, but the lack of ordinary safety precautions, which led to the injury. We conclude that under the "specific" and "limited" exceptions, see *Bagley*, 658 N.E.2d at 588, to the general rule of non-liability, we do not consider the level of skill or experience of the independent contractor, only the risk involved in the performance of the work itself.[2] Because the risk involved in Steelcore's re-roofing work was routine and ordinary, the fourth exception is inapplicable.

## II.

Montgomery argues that Steelcore's failure to comply with regulations of the Indiana Occupational Safety and Health Act ("IOSHA"), Ind.Code § 22–8–1.1–1 et seq., and related federal regulations is within the fifth exception to the general rule of nonliability. Specifically, Montgomery contends that Ryobi knew that Steelcore was violating these safety regulations and took no action to prevent the violations.

▪ This exception "requires the knowledge and sanctioning of the illegal act at the time of contracting by the owner." *Cummings*, 173 Ind.App. at 390, 363 N.E.2d at 1277. In addition, liability attaches to an owner who knows of and sanctions an illegal act. *See Prest–O–Lite v. Skeel*, 182 Ind. 593, 106 N.E. 365, 368 (1914). Montgomery does not argue that Ryobi entered into a contract which called for performance of an illegal act, or knew at the time of contracting that Steelcore would commit an illegal act. Montgomery relies upon *Prest–O–Lite* to broaden the fifth exception to include owners who become aware of illegal acts during the course of performance of the contract.

In *Prest–O–Lite*, the building owner failed to obtain a building permit when it directed the contractor to add an additional third story to a building then being constructed,

which subsequently collapsed. *Prest–O–Lite*, 106 N.E. at 366. The permit was required by ordinance, which had the force of law. The court stated:

> It must be regarded as well-settled doctrine, first, that, if one *upon whom the statute imposes a duty,* violates that duty, and the violation results in an injury, he is liable, irrespective of all questions of care and prudence; and, second, that it is no defense to prove that the actual breach of law was committed by a person employed by and acting for him, upon whom the duty rests, if the latter knew of and sanctioned, even if he did not direct, the illegal act.

*Id.* 106 N.E. at 368 (citing *Pitcher v. Lennon*, 12 A.D. 356, 42 N.Y.S. 156 (N.Y.App.Div. 1896)) (emphasis added). The *Prest–O–Lite* court found that because the plans originally called for a future third story, a permit would have been granted and therefore no causal connection was shown between the illegal act and the injury.

▪ We distinguish *Prest–O–Lite* from the present case, however. In *Prest–O–Lite*, the owner/contractee facilitated the ordinance violation by itself failing to obtain the required building permit, which it had a duty to obtain. In contrast, Montgomery points to no affirmative act on Ryobi's part which was illegal or can be said to sanction Steelcore's allegedly illegal actions, only the knowledge of some Ryobi employees that Steelcore was not using certain safety devices. Moreover, under IOSHA, Ryobi had no duty which Steelcore could be said to have breached on Ryobi's behalf. *See Slaubaugh v. Willies Development, Inc.*, 654 N.E.2d 746 (Ind.Ct. App.1995) (holding that general contractor had no statutory duty under IOSHA to employee of another contractor); *Robinson v. Kinnick*, 548 N.E.2d 1167 (Ind.Ct.App.1989) (holding that property owner had no statutory duty under Ind.Code § 22–1–1–10 to provide a safe work place to employee of independent contractor), *trans. denied.*

Montgomery also relies upon two New York cases cited by *Prest–O–Lite* and *Cum-*

---

2. Indeed, an owner has "a right to rely on a presumption that the contractor would discharge the legal duties owing to his employees and third persons." *Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266, 1274 (Ind.Ct.App.1977).

*mings: Pitcher v. Lennon,* 12 A.D. 356, 42 N.Y.S. 156 (1896) and *Brennan v. George L. Walker Co.,* 93 Misc. 57, 156 N.Y.S. 314 (1915).[3] Montgomery cites *Brennan* in support of the proposition that:

> Mere knowledge on the part of the [general contractor] that the work was being done in an *improper* manner was not sufficient to charge the [general contractor] with negligence, though knowledge that it was being done in an *unlawful* manner would be sufficient to render the [general contractor] liable therefor.

*Brennan,* 156 N.Y.S. at 316 (emphasis added). Because the *Brennan* court relied upon *Pitcher,* we will turn directly to that case. In *Pitcher,* the plaintiff's decedent was killed while working in a portion of a building being constructed by the defendant which collapsed. The defendant was the owner of the building and was supervising the construction himself. The owner directed the contractor regarding the masonry work and "ordered the granite blocks or templets whose too narrow distribution of weight caused the fall and violated the statute." *Pitcher,* 42 N.Y.S. at 157. The court held:

> First, that if one upon whom the statute imposes a duty violates that duty, and the violation results in an injury, he is liable, irrespective of all questions of care and prudence; and, second, that it is no defense to prove that the actual breach of law was committed by a person employed by, and acting for, him upon whom the duty rests, if the latter knew of and sanctioned, even if he did not direct, the illegal act.

*Id.* at 158.

We conclude that *Pitcher* was applicable to *Prest–O–Lite* because in both cases it was shown that the illegal act was committed by the building owner, who then directed the contractor to carry out the work in spite of a building code violation. Likewise, in *Brennan,* the general contractor was found liable because it "not only had knowledge of the manner in which said work was unlawfully

done, but actually participated in exercising control and direction over the manner in which it was done." *Brennan,* 156 N.Y.S. at 315.

Ryobi had no control over and gave no directions concerning the manner in which Steelcore carried out its work. As stated above, Montgomery points to no act on Ryobi's part, beyond the knowledge of some of its employees, which can be said to have violated a duty imposed by statute or which directed such a violation.

In addition, Ryobi's contract with Steelcore provided that Steelcore "will maintain safety practices," r. 121, and would "provide temporary facilities for the construction project ... [and] maintain a safe construction site." R. 128. We have refused to extend a specific duty to an owner/contractee where the contract prescribed safety rules and required the contractor to observe those rules or any laws relating to safety. *Phillips v. United Engineers & Constructors, Inc.,* 500 N.E.2d 1265, 1268 (Ind.Ct.App.1986). We now decline to extend the fifth exception to the general rule of nonliability to include owners who merely become aware of illegal acts during the course of performance of the contract, absent the owner/employer's participation in or direction of the illegal act.

We hold that the trial court erred in denying Ryobi's motion for summary judgment. We reverse the decision of the trial court and remand with instructions to enter summary judgment in favor of Ryobi.

Reversed and remanded.

BAKER, J., and GARRARD, J., concur.

---

**3.** Our research indicates that *Prest–O–Lite* is the only Indiana case ever to cite the *Pitcher* case, and likewise *Cummings* is the only Indiana case which cites the *Brennan* case.