# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2019, 5:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Ann C. Coriden
Timothy P. Coriden
Coriden Glover, LLC
Columbus, Indiana

ATTORNEY FOR APPELLEES

Bruce B. Paul
Stites & Harbison, PLLC
Jeffersonville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paula Hercamp, Kyle Hercamp, and Matthew Hercamp, *Appellants-Plaintiffs,* v. Justin M. Pyle, State Farm Mutual Automobile Insurance Company,[1] Enterprise Leasing Company of Indianapolis, LLC, and EAN Holdings, LLC, *Appellees-Defendants.* | October 10, 2019 Court of Appeals Case No. 18A-CT-2958 Appeal from the Jackson Superior Court The Honorable AmyMarie Travis, Judge Trial Court Cause No. 36D01-1708-CT-30 |

---

[1] Justin M. Pyle and State Farm Mutual Automobile Insurance Company are not participating in this appeal, but because they are parties of record in the trial court, they are parties on appeal. *See* Ind. Appellate Rule 17(A).

**Kirsch, Judge.**

Paula Hercamp ("Paula"), Kyle Hercamp ("Kyle"), and Matthew Hercamp ("Matthew") (collectively, "the Hercamps") appeal the trial court's separate entries of summary judgment for EAN Holdings, LLC ("EAN") and Enterprise Leasing Company of Indianapolis, LLC ("Enterprise"), and raise two issues, which we consolidate and restate as: whether the trial court erred in granting summary judgment to both EAN and Enterprise.

We affirm.

## Facts and Procedural History

In the early hours of August 5, 2015, Justin M. Pyle ("Pyle") became intoxicated, drove his car, and crashed it off the road. *Appellants' App. Vol. II* at 128. At 7:00 a.m., the accident was investigated by Matthew Schalliol, Chief of Police for Walkerton, Indiana ("Chief Schalliol"), who smelled a "strong odor of alcoholic type beverage emanating from Pyle's person." *Id.* Pyle admitted to Chief Schalliol that he had been drinking and was not sure if he was too intoxicated to drive. *Id.*

About four and one-half hours later, at 11:32 a.m., Pyle went to a Plymouth, Indiana Enterprise store to rent a Nissan Altima ("the Altima"), which EAN

had leased to Enterprise as a vehicle to rent to customers. *Id.* at 100-04.[2] Pyle did not appear to be intoxicated, presented a valid driver's license to the Enterprise employee who waited on him, and signed the rental agreement. *Id.* at 88, 101. The next day, on August 6, 2015, Pyle was driving the Altima in Jackson County when he collided with a 2004 Chevrolet Avalanche ("the Avalanche"), which Paula was driving and in which Kyle rode as a passenger; Matthew owned the Avalanche. *Id.* at 23, 27. Both Paula and Kyle were hurt. *Id.* at 28, 31, 34.

[5] On August 4, 2017, the Hercamps filed a complaint against EAN, Pyle, and State Farm Automobile Insurance Company,[3] arguing, as to EAN, that it negligently entrusted the Altima to Pyle. *Id.* at 17-25. On September 12, 2017, the Hercamps filed an amended complaint, which added Enterprise as a defendant, and likewise alleged that Enterprise had negligently entrusted the Altima to Pyle. *Id.* at 26-37. On February 16, 2018, EAN and Enterprise filed separate motions for summary judgment, but both made the same argument, *i.e.*, that even if Pyle was drunk when Enterprise entrusted the Altima to Pyle, neither EAN nor Enterprise had actual knowledge that Pyle was intoxicated at the very moment that Enterprise rented the car to Pyle, thus entitling them to summary judgment. *Id.* at 76-107. In support, both EAN and Enterprise

---

[2] The record contains conflicting information about whether EAN or Enterprise actually owned the Altima. *Appellants' App. Vol. II* at 106 and 61, 88, 75, 104. However, as we explain later, this issue of fact is not material to our resolution of the Hercamps' appeal.

[3] State Farm insured the Avalanche. *Id.* at 22, 33.

designated, *inter alia*: 1) the rental agreement; and 2) Pyle's response to requests for admission, in which he stated that he presented a valid driver's license to the Enterprise employee who waited on him and that he was not intoxicated when he rented the Altima. *Id*. at 85, 88, 101, 104. On April 16, 2018, in response to both motions for summary judgment, the Hercamps argued, in part, that there were material issues of fact regarding knowledge of Pyle's intoxication at the time he rented the Altima because he appeared to be intoxicated four and one-half hours earlier. *Id*. at 108-44. In support, the Hercamps designated evidence showing that in the hours preceding Pyle's renting of the Altima: 1) Pyle had been drinking and crashed his car; 2) when Chief Schalliol investigated the accident around 7:00 a.m., four and one-half hours before Pyle rented the Altima, Chief Schalliol smelled the "strong odor" of alcohol emanating from Pyle; 3) Pyle acknowledged he may have been too intoxicated to drive; and 4) Pyle presented Chief Schalliol with paperwork outlining complaints from Pyle's coworkers about his irrational behavior. *Id.* The Hercamps also designated evidence showing that in the six weeks preceding the accident: 1) Pyle had exhibited a pattern of erratic behavior and was cited for several driving-related offenses; and 2) that behavior resulted in the removal of firearms from Pyle's home and the issuance of a protective order against Pyle. *Id*. at 127-38. On June 6, 2018, both EAN and Enterprise filed replies in support of their motions for summary judgment. *Id*. at 145-61. On November 12, 2018, the trial court granted both EAN's and Enterprise's motions for summary judgment, found there was no just reason for delay, and entered judgment on the issues disposed

of by its summary judgment rulings. *Id.* at 13-16; *see* Ind. Trial Rule 56(C). The Hercamps now appeal.

## Discussion and Decision

> We review summary judgment de novo, applying the same standard as the trial court: Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences.
>
> The initial burden is on the summary-judgment movant to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. And although the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court.

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (internal citations and quotations omitted). We may affirm a grant of summary judgment upon any theory supported by the designated evidence. *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015). "A defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least

one element of the plaintiff's claim." *Frohardt v. Bassett*, 788 N.E.2d 462, 467 (Ind. Ct. App. 2003), *trans. denied*.

[6] As to negligent entrustment, a plaintiff:

> must demonstrate that another: (1) entrusted her car; (2) to an incapacitated person or one who is incapable of using due care; (3) with *actual and specific knowledge* that the person is incapacitated or incapable of using due care at the time of the entrustment; (4) proximate cause; and (5) damages.

*Bailey v. State Farm Mut. Auto. Ins. Co.*, 881 N.E.2d 996, 1001 (Ind. Ct. App. 2008) (internal quotations omitted) (emphasis added); *see also Johnson v. Owens*, 639 N.E.2d 1016, 1022 (Ind. Ct. App. 1994), *trans. denied*; *Stocker v. Cataldi*, 489 N.E.2d 144, 145 (Ind. Ct. App. 1986), *trans. denied*. A person who is intoxicated can be considered incompetent to drive safely. *Sutton v. Sanders*, 556 N.E.2d 1362, 1365 (Ind. Ct. App. 1990). Evidence about what the entrusting person or entity should have known is not dispositive. *Ellsworth v. Ludwig*, 140 Ind. App. 437, 441, 223 N.E.2d 764, 766 (1967), *trans. denied*; *Stocker*, 489 N.E.2d at 145-46. "[I]n order to recover against the owner-bailor of a car, the borrower-bailee *must be drunk at the very moment of the entrustment*, and the bailor must have *actual and immediate knowledge* of this fact." *Ellsworth*, 223 N.E.2d at 765 (emphasis added). Thus, to incur liability, EAN and Enterprise must have had actual and immediate knowledge that Pyle was incompetent to drive at the very moment Enterprise entrusted the Altima to him. *See id.*; *see also Frohardt*, 788 N.E.2d at 470.

[7] The actual knowledge requirement in auto-related negligent entrustment claims was established by our Supreme Court in *Fisher v. Fletcher*, 191 Ind. 529, 133 N.E. 834 (1922). *Fisher* held that where a person borrows or rents a vehicle from another, a bailor-bailee relationship is created. *Id.* at 835. Generally, a bailor is not responsible for injuries to a third party caused by the bailee's negligence. *Id.* However, an exception to this rule exists when "the bailor has [e]ntrusted a dangerous article to one whom he knows to be unfamiliar with its dangerous quality, uninstructed in its use, or incompetent to use due care." *Id.* In *Fisher*, Frank Clemens ("Clemens") was a chauffeur for Stoughton Fletcher ("Fletcher"). Fletcher often allowed Clemens to borrow the vehicle Clemens drove as a chauffeur for his personal use even though Fletcher knew "Clemens was in the habit of drinking to excess, and of becoming intoxicated when he was released from his regular work." *Id.* at 834. One evening, Clemens borrowed the vehicle, and while driving under the influence of alcohol, he crashed into Fisher, who was travelling in a horse-drawn carriage. *Id.* at 835. In suing Fletcher, Fisher argued that Fletcher negligently entrusted the vehicle to Clemens because Fletcher knew that Clemens was a "wild and reckless driver" because while working for Fletcher, Clemens had been involved in several car accidents and had been fined and convicted for driving-related offenses. *Id.* at 834-35. Nonetheless, the Supreme Court held that Fletcher could not be liable for negligent entrustment because Fisher had only alleged that Clemens "was in the habit of becoming intoxicated," not that Fletcher knew Clemens was intoxicated at the time Fletcher entrusted the vehicle to Clemens. *Id.* at 836.

[8]     In *Ellsworth*, we applied *Fisher's* actual-knowledge requirement. *Ellsworth*, 223 N.E.2d at 765. Ellsworth, employed as a truck driver, was "well known in the community for his ability to consume alcoholic beverages." *Id.* One day, Ellsworth sought and obtained permission from his employer to borrow his employer's truck. *Id.* Ellsworth was later in an accident, and the officer who investigated the accident testified that Ellsworth was drunk. *Id.* However, we held that there was no evidence that Ellsworth's employer had actual knowledge that Ellsworth was drunk when the employer entrusted the truck to Ellsworth, so the trial court did not err in granting the employer's motion for a new trial. *Id*. at 766.

[9]     Applying *Fisher* and *Ellsworth*, we assume without deciding that Pyle was intoxicated when he rented the car from Enterprise. Nonetheless, we conclude that both EAN's and Enterprise's designated evidence demonstrated the absence of any genuine issue of material fact as to their *actual knowledge* about Pyle's alleged intoxication at the very moment Enterprise rented the Altima to Pyle. In his response to the requests for admissions, Pyle stated that he was not intoxicated when he rented the Altima and that he presented a valid driver's license to the Enterprise employee who rented the Altima to him. *Appellants' App. Vol. II* at 85, 101.[4] Thus, the designated evidence demonstrated a lack of

---

[4] The Hercamps argue that although Pyle's admissions are relevant, they are not conclusive of Enterprise's and EAN's knowledge because admissions apply to and bind only the answering party. *See, e.g., Gen. Motors Corp., Chevrolet Motor Div. v. Aetna Cas. & Sur. Co.*, 573 N.E.2d 885, 890 (Ind. 1991). However, the cited cases apply this prohibition where the admission impugns a co-defendant, not a plaintiff. *See e.g., Shoup v. Mladick*, 537 N.E.2d 552, 553 (Ind. Ct. App. 1989). Therefore, Pyle's admissions were binding as to the Hercamps.

material issue of fact as to whether EAN or Enterprise had immediate and actual knowledge of Pyle's alleged intoxication when Pyle rented the Altima from Enterprise. Therefore, the burden shifted to the Hercamps to come forward with contrary evidence showing an issue for the trier of fact. *See Hughley*, 15 N.E.3d at 1003.

[10] The Hercamps try to meet this burden by citing evidence nearly identical to facts in both *Fisher* and *Ellsworth* that did not create a material issue of fact about whether the party who entrusted the vehicle to another had actual knowledge at the moment of the entrustment that the person borrowing the vehicle was intoxicated. *See Fisher*, 133 N.E. at 836; *Ellsworth*, 233 N.E.2d at 765. The Hercamps designated evidence showing that in the six weeks preceding the accident: 1) Pyle had exhibited a pattern of erratic behavior and was cited for several driving-related offenses; and 2) this behavior resulted in the removal of firearms from Pyle's home and the issuance of a protective order against Pyle. *Appellants' App. Vol. II* at 127-38. The Hercamps also designated evidence showing that in the hours preceding Pyle's renting of the Altima: 1) Pyle had been drinking and crashed his car; 2) when Chief Schalliol investigated the accident around 7:00 a.m., four and one-half hours before Pyle rented the Altima, Chief Schalliol smelled the "strong odor" of alcohol emanating Pyle; 3) Pyle acknowledged to Chief Schalliol that he may have been

---

The Hercamps were free to discover and designate evidence to create material issues of fact about EAN's and Enterprise's actual knowledge about Pyle's intoxication but failed to do so.

too intoxicated to drive; and 4) Pyle presented Chief Schalliol with paperwork outlining complaints from Pyle's coworkers about his irrational behavior. *Id.*

[11] The Hercamps' designated evidence does not meet their burden to show a material issue of fact about EAN's and Enterprise's actual knowledge that Pyle was intoxicated at the moment he rented the Altima from Enterprise. *See Hughley*, 15 N.E.3d at 1003; *Ellsworth*, 223 N.E.2d at 766. Both *Fisher* and *Ellsworth* make clear that a person's past behavior -- such as a habit of drunkenness, motor vehicle accidents, and traffic offenses -- do not, as a matter of law, show that the party entrusting a vehicle to another person had actual knowledge at the moment of the entrustment that the other person was intoxicated or otherwise unfit to drive. *See Fisher*, 133 N.E. at 835-36; *Ellsworth*, 223 N.E.2d at 766-67. Facts regarding Pyle's past behavior is precisely the kind of evidence the Hercamps highlight to show material issues of fact. They cite Pyle's behavior as far back as six weeks before Pyle rented the Altima, including driving offenses and erratic behavior. They also cite evidence showing that Pyle was intoxicated four and one-half hours before he rented the Altima.

[12] Such evidence does not create a material issue of fact that Enterprise had actual knowledge at the very moment it rented the Altima to Pyle that Pyle was intoxicated. *See Ellsworth*, 223 N.E.2d at 765. EAN's and Enterprise's designated evidence showed the absence of a genuine issue of material fact, that such a showing shifted the burden to the Hercamps to come forward with contrary evidence showing a material issue of fact, and that the Hercamps failed

to meet that burden. *See Hughley*, 15 N.E.3d at 1003. Thus, both EAN and Enterprise demonstrated that the undisputed material facts negated at least one element of the Hercamps' negligent entrustment claim, entitling both EAN and Enterprise to summary judgment. *See Frohardt*, 788 N.E.2d at 467. Therefore, the trial court did not err in granting EAN's and Enterprise's motions for summary judgment.[5] *See Stocker*, 489 N.E.2d at 145 (mother's knowledge of son's occasional marijuana use did not create material issue of fact about whether she had actual knowledge her son was intoxicated at the moment she entrusted her vehicle to him); *Johnson*, 639 N.E.2d at 1022 (affirming entry of summary judgment where no material issue of fact about whether seller of car knew, at the time of the sale, that the purchaser of the car did not have a valid driver's license).

[13] Affirmed.[6]

Vaidik, C.J., and Altice, J., concur.

---

[5] The Hercamps ask us to discard *Fisher's* actual-knowledge requirement and, in its stead, apply a test that would require negligent-entrustment plaintiffs, when suing a for-profit entity, to show only that the entrusting party *should have known* that the other person was intoxicated or otherwise impaired. *Appellants' Br.* at 16, 19. We leave that issue for the Indiana Supreme Court and the Indiana General Assembly.

[6] Since we find that EAN and Enterprise were entitled to summary judgment because they demonstrated that the undisputed material facts negated one element of the Hercamps' negligent entrustment claim – actual knowledge of Pyle's intoxication at the very moment Enterprise rented the Altima to Pyle - we need not address the Hercamps' argument that summary judgment is inappropriate because there is a material issue of fact about whether EAN or Enterprise owned the Altima.. *See Frohardt*, 788 N.E.2d at 467.